IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| CASEY JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| VS. | ) | No. 13-1102-JDT-egb |
| | ) | |
| | ) | |
| CORRECTIONS CORPORATION OF | ) | |
| AMERICA, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER TO MODIFY THE DOCKET
ORDER OF PARTIAL DISMISSAL
AND
ORDER TO ISSUE AND SERVE PROCESS ON THE REMAINING DEFENDANT

On April 1, 2013, Plaintiff Casey Jackson, Tennessee Department of Correction ("TDOC") prisoner number 119684,[1] an inmate at the Whiteville Correctional Facility ("WCF") in Whiteville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, accompanied by a motion seeking leave to proceed *in forma pauperis*. (Docket Entries 1 & 2.) In an order issued on April 4, 2013, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915(a)-(b). (D.E. 3.) The Clerk shall record the Defendants as the Corrections

---

[1] The handwritten portions of the complaint are difficult to read, and the Clerk recorded Plaintiff's TDOC number as 119634. However, the envelope and the accompanying exhibits show that his number is 119684. The Clerk is DIRECTED to modify the docket to reflect the correct TDOC number.

Corporation of America ("CCA"), which was sued as "Correction Corporation of America"; Nurse Practitioner First Name Unknown ("FNU") Doaks; and Health Administrator Robert Preston.

The complaint alleges that Plaintiff is a diabetic who previously took 500 milligrams of Metformin daily to control his blood sugar. (D.E. 1 at 5, Specific Claims ¶ 3.) Plaintiff also tested his blood sugar every day, as directed by his "street doctor." (Id.)

Plaintiff was transferred to the WCF on March 21, 2012. (Id. ¶ 4.) From March 12, 2012, to September 2012, Defendant Doaks would not allow Plaintiff to test his blood sugar. Doaks also "took away Plaintiff's diabetic diet meal that he was receiving prior to arriving at WCF." (Id. ¶ 5.) During this time, Plaintiff made several requests to have his blood sugar tested. Those requests were ignored. (Id. at 5-6, ¶ 6.) Plaintiff noticed "a drastic change in how well he could see, and he felt tired and sick on a daily basis." (Id.) In or around September 2012, a blood test revealed that Plaintiff's blood sugar was above 300, which is a "critical level." (Id. at 6, ¶ 7.) As a result of the care he received since March 12, 2012, Plaintiff is now required to take 2000 milligrams of Metformin every day. He also must take up to two insulin shots and five milligrams of glucose per day. (Id. ¶ 8.) Plaintiff is now required to wear glasses. (Id. ¶ 9.) Plaintiff is also allegedly at risk of long-term damage to his liver and kidneys. (Id. ¶ 10.)

The WCF is operated by Defendant CCA. "According to CCA's contract with the Doctor at [WCF], the Doctor is paid a flat rate per inmate per day (PIPD) under the doctor's care, every month." (Id. at 8, ¶ 17.) "A certain percentage (approximately 20%) of that

figure (PIPD) is withheld so that the Doctor's minimum salary is actually approximately 80% of the (PIPD) amount agreed to by CCA and the doctor." (Id. ¶ 18.)

> On a periodic basis (previously every six months), CCA would calculate the amount being spent (PIPD). If this amount would be equal to or more than the (PIPD), no further money would be distributed to the Doctor (ie. the Doctor would lose 20% of his or her pay that was agreed to in his/her contract). However, if the amount was less than the PIPD, the doctor would receive a "proportionate return" of the amount withheld, up to the full 100% of the PIPD, with an additional bonus if the doctor could keep the PIPD below a certain level.

(Id. ¶ 19.) According to Plaintiff, the existence of this policy was the "moving force" causing him to be denied treatment for his diabetes. (Id. ¶ 20.) CCA also "maintains a custom or policy to make profit from the incarceration of inmates at their facilities, including WCF where Plaintiff resides." (Id. at 9, ¶ 21.) This custom was also the "moving force" causing him to be denied appropriate medical care. (Id. ¶ 22.)

Defendant Preston is alleged to "make[] decisions regarding who receives and who does not receive medical care at WCF." (Id. at 10, ¶ 29.) The complaint avers that Preston "made a decision (or acquiesced thereto) to not give Plaintiff daily sugar-level testing for his diabetic condition, and to take away Plaintiff's diabetic diet." (Id. ¶ 30.)

Plaintiff seeks compensatory damages in the amount of $2 million and $2 million in punitive damages. (Id. at 12.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

>    (2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009), and in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007), are applied. Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally." Hill, 630 F.3d at 470 (citing Neitzke v. Williams, 490 U.S. 319, 325 (1989)). "Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." Id. (citing Neitzke, 490 U.S. at 328-29).

4

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.

Id. at 471 (citations and internal quotation marks omitted).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." Williams, 631 F.3d at 383 (quoting Martin v. Overton, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, No. 09-5480, 2011 WL 1827441, at *4 (6th Cir. May 12, 2011) ("[W]e decline to

5

affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue."); *cert. denied*, 132 S. Ct. 461 (2011).

To state a claim under 42 U.S.C. § 1983,[2] a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).

Defendant Preston cannot be held liable merely because of his position as Health Administrator. Under U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 556 U.S. at 676; see also Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." Iqbal, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly

---

[2] Section 1983 provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

6

> authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

Bellamy, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. Grinter v. Knight, 532 F.3d 567, 575-76 (6th Cir. 2008); Gregory v. City of Louisville, 444 F.3d 725, 751 (6th Cir. 2006); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); Lillard v. Shelby Cnty. Bd. of Educ., 76 F.3d 716, 727-28 (6th Cir. 1996).

In this case, the allegations against Defendant Preston are merely conclusory. There is no allegation that Preston made any specific statement or took any specific action addressing Plaintiff's medical treatment. Given that Plaintiff alleges it was Defendant Doaks who repeatedly denied his requests for blood sugar testing and took away his diabetic diet, the vague allegation that Defendant Preston "made a decision (or acquiesced thereto)" (D.E. 1 at 10, ¶ 30), demonstrates that Plaintiff does not know what actual role, if any, Preston played in his medical treatment. Thus, the complaint does not adequately allege that Preston, through his own actions, violated Plaintiff's rights or was even aware of the events at issue.

The complaint also does not adequately state a claim against CCA. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." Thomas v. Coble, 55 F. App'x 748, 748 (6th Cir. 2003) (citing Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996)); see also Parsons v. Caruso, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to

7

prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons. Thomas, 55 F. App'x at 748-49; Street, 102 F.3d at 817-18; Johnson v. Corr. Corp. of Am., 26 F. App'x 386, 388 (6th Cir. 2001). CCA "cannot be held liable under a theory of respondeat superior." Braswell v. Corr. Corp. of Am., 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against CCA, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. Id.

The complaint does not adequately allege that Plaintiff suffered any injury because of an unconstitutional policy or custom of CCA. The mere allegation that CCA is a for-profit corporation is insufficient to establish that it had an unconstitutional policy, that the policy was applied in Plaintiff's case, and that the policy was a "moving force" behind the denial of treatment.

> [Plaintiff's] allegations that the purported policies existed at CMS and that these policies were directly responsible for his alleged lack of medical care are conclusory and are not buttressed by any factual allegations. Although the plaintiff speculates that medical care is denied to inmates by CMS for monetary, non-medical reasons, he provides no factual allegations supporting this speculation. . . . Further, the plaintiff has not set forth any factual allegations supporting the conclusion that any such policies were the moving force behind the alleged deficiencies in his own medical treatment as opposed to being the result of actions of individual actors. Merely positing a theory of legal liability that is unsupported by specific factual allegations does not state a claim for relief which survives a motion to dismiss.

Ezell v. Metro. Gov't of Nashville & Davidson Cnty., No. 3:11-0405, 2012 WL 2601940, at *8 (M.D. Tenn. June 6, 2012) (report and recommendation), adopted, 2012 WL 2601936

(M.D. Tenn. July 5, 2012). See also Moffat v. Mich. Dep't of Corr., No. 09-14696, 2010 WL 3906115, at *9 n.11 (E.D. Mich. May 21, 2010) (allegation that "CMS had a policy of denying treatment in order to maximize profits" insufficient to survive motion to dismiss without supporting factual allegations) (report and recommendation), adopted, 2010 WL 3905354 (E.D. Mich. Sept. 27, 2010); Crawford v. Mich. Dep't of Corr., No. 2:09-cv-7, 2010 WL 1424246, at *5 (W.D. Mich. Mar. 31, 2010) ("Plaintiff has pleaded no facts supporting his allegation that, pursuant to contract, Plaintiff's medical treatments were based upon cost concerns."); Broyles v. Corr. Med. Servs., Inc., No. 08-1638, 2009 WL 3154241 (6th Cir. Jan. 23, 2009) (inmate's "bare allegation of a custom or policy, unsupported by any evidence, are insufficient to establish entitlement to relief"). The complaint in this case fails to set forth any facts suggesting that the execution of this policy, rather than individual malfeasance on the part of Defendant Doaks, caused the withholding of treatment.

This deficiency is not cured by the allegations about the financial incentives to CCA physicians to reduce costs. Notably, neither of the individual Defendants is a physician employed by CCA; therefore, their compensation would not appear to be affected by this policy. There are no factual allegations tying this alleged CCA policy to a denial of care. This absence is noteworthy in light of the fact that one of the specific acts attributed to Defendant Doaks is the denial of diabetic meals. There is no allegation that CCA's contract with its doctors counts the cost of any diabetic meals in determining compensation. There also is no claim that CCA or its doctors have a financial disincentive to order diabetic meals

for inmates who need them. The complaint does not state that diabetic meals are more expensive than the meals offered to the general population of inmates at the WCF.

Therefore, the Court DISMISSES the claims against Defendants CCA and Preston for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Process will be issued for Defendant Doaks in her individual capacity on Plaintiff's claim for deliberate indifference to a serious medical need. It is ORDERED that the Clerk shall issue process for Defendant Doaks and deliver that process to the U.S. Marshal for service. Service shall be made on Defendant Doaks pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rule of Civil Procedure 4.04(1) and (10), either by mail or personally if mail service is not effective. All costs of service shall be advanced by the United States.

It is further ORDERED that Plaintiff shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendant Doaks or directly on Doaks if she is unrepresented. Plaintiff shall make a certificate of service on every document filed. Plaintiff shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[3]

---

[3] A free copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the Court's website at www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.

Plaintiff shall promptly notify the Clerk, in writing, of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE